1
2
3
4
5
6
7            UNITED STATES DISTRICT COURT
8           NORTHERN DISTRICT OF CALIFORNIA
9              SAN FRANCISCO DIVISION
10

| | |
|---|---|
| 11  EASTON-BELL SPORTS, INC., | Case No. 13-cv-00283 NC |
| 12               Plaintiff, | **ORDER DENYING MOTION TO DISMISS OR TRANSFER** |
| 13          v. | Re: Dkt. No. 8 |
| 14  E.I. DUPONT DE NEMOURS & CO., | |
| 15               Defendant. | |

16

17        DuPont brings this motion to dismiss arguing that Easton-Bell's complaint for

18 declaratory relief is anticipatory and made with the purpose of improper forum shopping.

19 DuPont urges the Court to depart from the first-to-file rule, under which a later filed action

20 generally defers to an earlier filed action involving the same parties and issues, and dismiss

21 Easton-Bell's complaint.  In the alternative, DuPont moves the Court to transfer the instant

22 action to Delaware, where DuPont has sued Easton-Bell for trademark infringement.  The

23 issues are (1) whether the circumstances of this suit warrant the Court's exercise of

24 discretion to depart from the first-to-file rule, and if not (2) whether transfer is appropriate.

25 Because the Court determines that Easton-Bell's suit is neither anticipatory, nor brought in

26 bad faith, nor the product of improper forum shopping, and that convenience and the

27 interests of justice do not weigh in favor of transferring the action, the Court DENIES

28 DuPont's motion to dismiss or transfer.

# I. BACKGROUND

## A.    Allegations of Infringement and Licensing Negotiations

DuPont manufactures, sells, and distributes Kevlar.  Dkt. No. 8 at 8.  Kevlar is a synthetic fiber that is ballistic and stab-resistant, which is sold in a pulp or resin form and incorporated by manufacturers and distributors into finished products.  *Id.*  DuPont owns multiple federal registrations for the Kevlar trademark.  *Id.* at 9.  DuPont argues the mark is publicly recognizable and that its reputation and goodwill are valuable.  *Id.* at 9.

In July 2012, DuPont contacted Easton-Bell regarding the use of the Kevlar mark on its packaging for bicycle tires and locks.  Dkt. No. 1 at 4; Dkt. No. 8 at 10.  On July 23, 2012, the parties executed a "Mutual Confidential Disclosure Agreement" in order to facilitate the exchange of sensitive information between the companies and explore the possibility of a licensing agreement.  Dkt. No. 8 at 10.  Easton-Bell declined the proposed license in November 2012; Easton-Bell contends that the fees were too high given its limited and fair use of the mark.  Dkt. No. 1 at 4; Dkt. No. 8 at 11.

In December 2012, DuPont's corporate trademark counsel contacted Easton-Bell complaining about its use of the Kevlar mark, seeking an accounting of Easton-Bell's use of the mark on its products in order to appropriately value a licensing or settlement agreement, and asking for a response by January 4, 2013.  Dkt. No. 1 at 4; Dkt. No. 8 at 11.  Associate General Counsel for Easton-Bell asked for more time, due to the holidays.  Dkt. No. 8 at 11.  A conference call between DuPont and Easton-Bell was set for January 11, 2013, and DuPont's counsel assured Easton-Bell that DuPont sought an amicable resolution to their dispute.  Dkt. No. 8 at 11; Dkt. No. 18 at 8.  On January 11, 2013, DuPont asked Easton-Bell to provide an accounting by January 16, 2013 for a proposed settlement agreement.  Dkt. No. 18-3 at 23-24.  When Easton-Bell failed to respond, DuPont emailed Easton-Bell on January 18, 2013 asking them to respond by January 23, and again stating that it hoped an amicable resolution was possible.  *Id.* at 15.

On January 18, 2013, Easton-Bell filed this suit.  On January 28, 2013, DuPont filed suit in Delaware.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    Easton-Bell's Complaint**

On January 18, 2013, Easton-Bell brought an action in this Court seeking a declaratory judgment that it did not infringe DuPont's trademark under the Lanham Act, 15 U.S.C. §§ 1114, 1125.  Dkt. No. 1.  Easton-Bell alleges that, for the past six or seven years, it has purchased Kevlar, a DuPont product, from authorized distributors for use in its line of bicycle tires and locks.  *Id.* at 4.   In July 2012, DuPont contacted Easton-Bell, asserting that Easton-Bell was infringing upon its Kevlar trademark with respect to twenty Easton-Bell products.  *Id.*  DuPont proposed a licensing agreement for Easton-Bell's past and future use of the Kevlar trademark on its tires and bike locks.  *Id.*  Easton-Bell found the licensing fees proposed in the agreement "exorbitant" and declined DuPont's proposal.  *Id.*  Easton-Bell maintains that its use of the Kevlar mark is limited and constitutes fair use.  *Id.*  It also asserts that its use of the Kevlar mark is not likely to cause confusion or mistake, or to deceive consumers regarding the origin of its products.  *Id.* at 5.

**C.    DuPont's Delaware Complaint**

DuPont brought suit in the District of Delaware, alleging that Easton-Bell is infringing upon its Kevlar mark in violation of the Lanham Act, 15 U.S.C. §§ 1114, 1125.  DuPont seeks relief under 15 U.S.C. §§ 1125, 1116 (injunctive relief), and 1117 (damages and costs).

DuPont alleges that Easton-Bell has marketed and sold bicycle tires and locks in packaging that displays the Kevlar mark in a large yellow oval and in a font that is larger than Easton-Bell's own mark.  Dkt. No. 8, Ex. 4. at 4.  The Kevlar mark is also used on the products themselves.  *Id.* at 5.  DuPont alleges that Easton-Bell's use of the Kevlar mark is likely to deceive, confuse, and mislead consumers into believing that the products are endorsed by DuPont.  *Id.* at 6.  DuPont claims that Easton-Bell's use is knowing, intentional, and malicious, and that its objective is to exploit the "commercial magnetism" of the Kevlar brand.  *Id.*  DuPont contends that the misappropriation of its mark by Easton-Bell is causing irreparable harm to the goodwill symbolized by the Kevlar mark and its reputation for quality.  *Id.*

//

1

2    In addition to its claims under the Lanham Act, DuPont also brings a claim for

3 unfair and deceptive trade practices under Delaware law and a common law claim for

4 unfair competition. *Id.* at 9, 10.

5 **D.    DuPont's Motion to Dismiss**

6    DuPont moves to dismiss Easton-Bell's complaint arguing that it is an anticipatory

7 suit filed only to deprive DuPont of its choice of forum. Dkt. No. 8. DuPont argues that

8 the exercise of jurisdiction in an action for declaratory relief is discretionary, and that

9 courts have declined to exercise jurisdiction over declaratory actions in which "natural

10 defendants" have filed suit in order to secure a favorable forum. *Id.* at 12.

11    DuPont acknowledges that there is a "first-to-file" rule, a principle of federal comity

12 which gives priority to the first filed lawsuit over a second lawsuit in another jurisdiction

13 that involves the same subject matter and parties. *Id.* at 13. DuPont urges the Court to

14 depart from this rule because Easton-Bell's suit, although filed first, was filed in bad faith

15 for the purpose of improper forum shopping and is the "mirror-image" of the infringement

16 suit brought by DuPont in Delaware. *Id.* at 14, 16.

17    In the alternative, DuPont moves to transfer the instant action to Delaware in order

18 that it may be consolidated with its complaint there. *Id.* at 18. DuPont argues that venue is

19 proper in Delaware because Easton-Bell is incorporated under the laws of Delaware and

20 because it sells its products there, which constitutes substantial contact with the state. *Id.*

21 DuPont further argues that Delaware is more familiar with the Delaware state law claim it

22 has brought against Easton-Bell and has an interest in adjudicating that claim. *Id.* at 20.

23 Last, DuPont argues that the average time to trial is shorter in Delaware than in the

24 Northern District of California. *Id.*

25 **E.    Jurisdiction**

26    This Court has jurisdiction under 28 U.S.C. §§ 1331, 2201. The parties consented to

27 the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c). Dkt. Nos. 12, 13.

28 //

Case No. 13-cv-00283 NC
ORDER DENYING MOTION TO          4
DISMISS OR TRANSFER

## II. STANDARD OF REVIEW

### A.   First-to-File Rule

The first-to-file rule is "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982).  A court must consider three threshold factors when deciding to apply the first-to-file rule: the chronology of the two actions, the similarity of the parties, and the similarity of the issues involved. *See Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).  Where these factors are satisfied, a district court may transfer, stay, or dismiss an action. *Id.* at 623.  The rule serves to promote judicial efficiency and "should not be disregarded lightly"; "[c]ircumstances and modern judicial reality, however, may demand . . . a different approach from time to time." *Church of Scientology v. U.S. Dept. of Army*, 611 F.2d 738, 750 (9th Cir. 1979).  A district court may depart from the first-to-file rule where, for example, the first suit was filed in bad faith, is an anticipatory suit, or is the result of forum shopping. *Alltrade*, 946 F.2d at 628. "The most basic aspect of the first-to-file rule is that it is discretionary." *Id.*

### B.   Transfer of Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  A district court conducts an "'individualized, case-by-case consideration of convenience and fairness'" and considers multiple factors when determining if transfer is appropriate. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart v. Ricoh*, 487 U.S. 22, 29 (1988)).  Factors include: "(1) the location where [any] relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of

1  compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease

2  of access to sources of proof." *Jones*, 211 F.3d at 498-99.  In addition, whether the

3  disagreement is governed by a forum selection clause and whether any relevant public

4  policy in the forum state exists are "significant" factors.  *Id.* at 499.

### III. DISCUSSION

**A.     The First-to-File Rule Applies.**

Both actions involve only Easton-Bell and DuPont and seek to determine whether

Easton-Bell is in fact infringing upon a trademark registered by DuPont.  Easton-Bell's

action was filed first.  Therefore, the first-to-file rule would ordinarily apply.  The Court

thus considers whether this is an instance in which equity demands that it exercise its

discretion to depart from the first-to-file rule.

**1.     Easton-Bell's complaint is not anticipatory.**

An anticipatory suit is reason to depart from the first-to-file rule.  *See, e.g.*, *Alltrade*,

946 F.2d at 628.  "The exception for anticipatory suits is founded on a concern that the

plaintiff should not be deprived of its traditional choice of forum because a defendant with

notice of an impending suit first files a declaratory relief action over the same issue in

another forum."  *British Telecommc'ns  v. McDonnell Douglas Corp.*, Case No. 93-cv-

00677 MHP, 1993 WL 149860, *3 (N.D. Cal. May 3, 1993).  "Generally a suit is

anticipatory when the plaintiff filed its suit upon receipt of specific, concrete indications

that a suit by the defendant was imminent."  *Ward v. Follett Corp.*, 158 F.R.D. 645, 648

(N.D. Cal. 1994).

For example, in *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1099-

1100 (N.D. Cal 2006), defendant sent a letter to plaintiff that claimed plaintiff had breached

their contract, included an analysis of the factual history and discussion of harm suffered,

and stated unequivocally that "unless a settlement is reached within five (5) business days a

lawsuit will be filed."  Plaintiff responded by filing suit before the expiration of the five

days, and the Court found plaintiff's suit anticipatory.  *Id.* at 1100.  Similarly, plaintiff in

*Xoxide, Inc. v. Ford Motor Co.*, 448 F. Supp. 2d 1188, 1193 (C.D. Cal. 2006), filed an

1  anticipatory suit where it had been warned that failure to execute and comply with the terms

2  proposed by defendant by the specified deadline would result in litigation.  Xoxide had

3  initially responded to defendant's letters and indicated a willingness to comply with

4  defendant's requests.  *Id.* at 1193.  Xoxide, however, had also secretly filed a lawsuit, and

5  did not immediately serve defendant.  *Id.* at 1194.  Xoxide admitted to using the suit as a

6  kind of insurance policy to "keep [Xoxide's] place as to filing dates and times in the event

7  that discussions later broke down."  *Id.*

8      Conversely, where the threat of a possible lawsuit is less concrete, courts have found

9  first-filed declaratory judgment actions not anticipatory.  For example, in *Barnes & Noble,*

10  *Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 991-92 (N.D. Cal. 2011), plaintiff's suit was not

11  anticipatory where defendant's letter stated that it believed plaintiff was infringing, and

12  invited plaintiff to meet to initiate discussions on the licenses available; in the midst of the

13  negotiations, plaintiff filed suit instead of attending the next meeting.  In *Nat'l Union Fire*

14  *Ins. Co. of Pittsburgh, Pa. v. Payless Shoesource, Inc.*, Case No. 11-cv-01892 EMC, 2012

15  WL 3277222, *6 (N.D. Cal. Aug. 9, 2012), plaintiff's suit was not anticipatory where

16  defendant's letter stated that the cost of settlement would increase if plaintiff failed to

17  accept the proposed terms within three weeks and that defendant considered impleading

18  plaintiff into an existing suit.  In *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,

19  544 F. Supp. 2d 949, 961 (N.D. Cal. 2008), defendant's first-filed suit was not anticipatory

20  where plaintiff's letter stated that failure to comply with its terms would force it to "take

21  further legal action, but indicated an amicable resolution should be possible."

22      Here, DuPont's communications with Easton-Bell equivocated as to whether suit by

23  DuPont was imminent.  For example, in December 2012, DuPont's counsel stated in a letter

24  to Easton-Bell that "If we cannot get your cooperation . . . I have been instructed to take all

25  necessary legal remedies and actions . . . including instituting civil actions. . ."; "If I do not

26  hear from you, I have been asked to commence legal action. . . ."  Dkt. No. 8-6 at 27.  In

27  that same letter, DuPont also indicated that it "look[ed] forward to a speedy and amicable

28  final resolution."  *Id.* at 26.  Moreover, DuPont told Easton-Bell three times that it could

Case No. 13-cv-00283 NC
ORDER DENYING MOTION TO                    7
DISMISS OR TRANSFER

1  respond by a later date than first imposed by DuPont: first, it was comply by January 4, then

2  by January 11, then by January 16, and finally by January 23. Dkt. No. 8-4 at 2-4. In fact,

3  on January 18, 2013—two days after the then-current deadline had expired and without any

4  communication from Easton-Bell—DuPont's counsel granted the third extension and stated

5  "We are following up with you as our deadline has lapsed . . . . If we do not hear from you

6  by [January 23, 2013], this case would *then* be a willful infringement." *Id.* at 2 (emphasis

7  added). These never-ending extensions do not give specific, concrete indications that suit

8  was imminent. Furthermore, each communication reiterated that DuPont was "hopeful for

9  an amicable resolution," *id.* at 2-3, language which the court in *Intersearch* found failed to

10  give specific, concrete indications that a suit was imminent, 544 F. Supp. 2d at 961.

11  Easton-Bell's suit in this district preceded DuPont's last email by several hours,

12  which indicates that even as DuPont was granting Easton-Bell another extension and hoping

13  for an amicable resolution, Easton-Bell had already sought to vindicate its rights in

14  California. DuPont makes much about an email from Easton-Bell, ostensibly sent to

15  DuPont's counsel by mistake, that says "The plot thickens." Dkt. No. 8-5 at 2. This email

16  was sent two hours after Easton-Bell filed its complaint, Dkt. No. 1, so the inference that

17  Easton-Bell filed as a reaction to DuPont's last email is unwarranted. And, unlike in *Z-Line*

18  *Designs, Inc. v. Bell'O Int'l, LLC*, 218 F.R.D. 663, 666-67 (N.D. Cal. 2003), on which

19  DuPont relies and in which plaintiff filed suit before the expiration of a deadline, Easton-

20  Bell filed its complaint two days after it had missed the deadline imposed by DuPont, and

21  before it received word from DuPont that it could have a third extension. These facts are

22  not specific and concrete indications of an imminent suit by DuPont. Accordingly, Easton-

23  Bell's suit was not anticipatory.

24      **2.     Easton-Bell's complaint was not brought in bad faith.**

25      Some courts have found that allowing a suit for declaratory relief to proceed would

26  "thwart settlement negotiations, encouraging intellectual property holders to file suit rather

27  than communicate with an alleged infringer." *Z-Line Designs*, 218 F.R.D. at 665. Here,

28  however, DuPont does not allege any facts that indicate that Easton-Bell acted in bad faith

Case No. 13-cv-00283 NC
ORDER DENYING MOTION TO                          8
DISMISS OR TRANSFER

in these negotiations, or that they were merely a ruse so that Easton-Bell could get to the courthouse first.  Rather, DuPont and Easton-Bell had been discussing the possibility of a licensing agreement for six months.  Easton-Bell had signed a confidential disclosure agreement in order that the parties could converse freely about the relevant aspects of their businesses.  After a conference call between counsel at DuPont and Easton-Bell, Easton-Bell decided to file suit, instead of pursue settlement, just as the plaintiff in *Barnes & Noble*.  823 F. Supp. 2d at 991.  Without more, "there is little to suggest that [Easton-Bell] acted in bath faith simply by declining to continue with negotiations."  *Id.*

Furthermore, unlike the plaintiff in *Xoxide*, who continued to engage in negotiations despite having filed suit without serving the defendant, Easton-Bell filed suit only after missing the deadline to settle and then timely served DuPont.  *See* Dkt. Nos. 5, 7.  This also indicates that the suit was not brought in bad faith.

### 3.     Easton-Bell's suit is not the result of improper forum shopping.

DuPont urges that Easton-Bell's declaratory suit is, by its very nature, brought to secure a particular forum.  To the contrary, nothing "distinguish[es] this case from virtually any declaratory judgment action in which a party could show a reasonable threat of suit so as to satisfy the case or controversy requirement."  *Id.*  "The purpose of the Declaratory Judgment Act to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist."  *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), *abrogated in part by Wilton v. Seven Falls Co.*, 515 U.S. 277, 289-90 (1995).  To hold that an action seeking declaratory relief should yield to a coercive suit as a general rule, would automatically grant the plaintiff in the coercive suit "the choice of forum, whether [he] had sought—or sought to avoid—judicial resolution of the controversy."  *Genentech*, 998 F.2d at 937; *see also Int'l Bus. Machines Corp. v. Bajorek*, 191 F.3d 1033, 1037 (9th Cir. 1999) (noting split between Seventh and Federal Circuits and declining to resolve the question of "whether a district court must exercise its discretion to dismiss a declaratory judgment action, even though earlier filed, where the substantive action anticipated by the declaratory judgment action is pending.").

1    Other than the fact that Easton-Bell filed suit in the Northern District rather than

2    Delaware, DuPont points to nothing else that would indicate that the suit is an attempt to

3    improperly forum shop.  The operative substantive law is federal and would not motivate

4    forum shopping.  And, Easton-Bell has made a showing that the Northern District is

5    relevant to the action, as discussed further below.

6        In the absence of specific and concrete indications that DuPont was imminently filing

7    its coercive suit, and that Easton-Bell raced to the courthouse in order to be the first to file,

8    the Court declines to depart from the first-to-file rule.  Yet, just as the departure from the

9    first-to-file rule is discretionary, so is the exercise of jurisdiction in declaratory judgment

10   action.  *Wilton* , 515 U.S. at 288 ("In the declaratory judgment context, the normal principle

11   that federal courts should adjudicate claims within their jurisdiction yields to considerations

12   of practicality and wise judicial administration.").  Thus the Court also looks to the balance

13   of factors to determine if another forum would be more convenient to the parties in this

14   action.  *See Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008)

15   (District courts, when determining whether to entertain an action for declaratory relief,

16   should not "automatically go[] with the first filed action, the more appropriate analysis

17   takes account of the convenience factors under 28 U.S.C. § 1404(a).").

18   **B.    Transfer of Venue to the District of Delaware Is Inappropriate.**

19       DuPont moves in the alternative to transfer the instant action to the District of

20   Delaware.  The court considers the same factors when deciding to transfer an action under

21   28 U.S.C. § 1404 as when analyzing the "convenience" exception to the first-to-file rule.

22   *Pacesetter*, 678 F.3d at 96; *Barnes & Noble*, 823 F. Supp. 2d at 993.  Consistent with *Jones*,

23   in which the Ninth Circuit articulated examples of factors a court should consider when

24   deciding whether to transfer, courts in this district have looked to: "(1) plaintiff's choice of

25   forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to

26   the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of

27   consolidation of other claims, (7) any local interest in the controversy, and (8) the relative

28   court congestion and time of trial in each forum."  *Barnes & Noble*, 823 F. Supp. 2d at 993;

Case No. 13-cv-00283 NC
ORDER DENYING MOTION TO                        10
DISMISS OR TRANSFER

1  *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).  The

2  burden is on the moving party to establish that transfer is appropriate.  *Commodity Futures*

3  *Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979); *Jones*, 211 F.3d at 199.

4      The first factor weighs in favor of Easton-Bell, as it has chosen to file in the Northern

5  District of California.  A plaintiff's choice of forum is generally afforded substantial weight.

6  *See Sec. Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985); *Decker*

7  *Coal. Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *but cf. Williams*

8  *v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) (explaining that the degree of

9  deference accorded to plaintiff's forum choice is reduced when plaintiff does not reside in

10  the venue, "where the forum lacks a significant connection to the activities alleged in the

11  complaint," or when the forum is the result of improper forum shopping).  Bell Sports is

12  Easton-Bell's subsidiary and is solely responsible for selling the products that DuPont

13  alleges infringe upon its Kevlar mark.  Dkt. Nos. 18 at 19; 18-4 ¶ 2, 3.  Bell Sports is

14  located in Scotts Valley, in the Northern District of California.  Dkt. No. 18-4 ¶ 3.  These

15  facts weigh in favor of according Easton-Bell's choice of forum substantial weight and

16  further support the above analysis that Easton-Bell's suit is not motivated by improper

17  forum shopping.

18      DuPont contends, however, that this factor should be given little weight because

19  Easton-Bell's headquarters, as listed on its Security and Exchange Commission filings, is

20  located in Van Nuys, in the Central District of California.  Dkt. no. 8 at 19 n.3.  Even

21  reducing the weight this factor is given because Easton-Bell's headquarters is in the Central

22  District, the fact that Bell Sports, the alleged infringer, is located here is still persuasive.

23      The second, third, and fourth factors also weigh in favor of keeping the instant action

24  in the Northern District of California.  Easton-Bell states that "senior management and other

25  personnel involved in Bell Sports' use of the Kevlar mark" as well as "records and

26  documents related to [its] use" of the mark are in Scotts Valley, in Bell Sports' "research

27  and development facility."  Dkt. No. 18-4 ¶ 3.  DuPont states that "Delaware is a more

28  convenient forum for DuPont party witnesses," but fails to articulate which witnesses and

Case No. 13-cv-00283 NC
ORDER DENYING MOTION TO
DISMISS OR TRANSFER

11

evidence are there and why Delaware is more convenient.  Dkt. No. 8 at 19.

As to the respective fora's familiarity with the law, the operative claims are brought under the Lanham Act, which does not favor either jurisdiction.  DuPont states that Delaware is the more appropriate forum because the Delaware courts are better suited to adjudicate the one Delaware state law claim of unfair competition that DuPont has brought against Easton-Bell.  There are no state law claims in Easton-Bell's complaint.  The existence of a solitary state law claim also does not weigh in favor of either California or Delaware, as either jurisdiction could adeptly adjudicate a state law unfair competition claim in conjunction with a claim for infringement.  The ease of consolidation and the relative interest in the outcome of the case, likewise, are the same for both fora.

DuPont argues that Delaware's average time to trial is just less than three months shorter than the Northern District's average.  First, the difference between the average times to trial is minimal when compared to the fact that in both jurisdictions the time to trial is just under three years.  Second, the average time to trial for the respective districts is not as relevant to the analysis as the average time to trial for the particular judges in this case would be.  Third, the parties have consented to the jurisdiction of a magistrate judge, and the time to trial before a magistrate judge is shorter than the average of the Northern District.  Depending on the discovery necessary to the case, the Court is confident that trial could be set within a year.  This factor weighs decisively in favor of maintaining the action in this Court.

Because the first, second, third, fourth, and eighth factors weigh in favor of maintaining the action in the Northern District of California, and the fifth, sixth, and seventh factors do not weigh in favor of transferring the action, DuPont's motion to transfer is DENIED.

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV. CONCLUSION

Easton-Bell's claim for declaratory relief is neither anticipatory, nor brought in bad faith, nor an instance of improper forum shopping.  Accordingly, the Court applies the first-to-file rule.  After considering the convenience to the parties, the convenience to the witnesses, and the interests of justice, the Court DENIES DuPont's motion to dismiss or transfer.

DuPont must file its answer by April 10, 2013.  Fed. R. Civ. P. 12(a)(4).  The initial case management conference is set for April 24, 2013.  Dkt. No. 2.  By April 17, 2013, the parties must submit a joint case management statement.

IT IS SO ORDERED.

Date: March 26, 2013

_____
Nathanael M. Cousins
United States Magistrate Judge